UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SALVACION G. AGATON, ET AL., § § PLAINTIFFS § § VERSUS § § HOSPITALITY & CATERING § SERVICES, INC., A/K/A § HOSPITALITY CATERING § MANAGEMENT SERVICES, § § DEFENDANT § § | CIVIL ACTION NO: 5: 11-cv-01716 JUDGE ELIZABETH E. FOOTE MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

TO THE HONORABLE COURT:

Salvacion G. Agaton, et al. ("Plaintiffs") seek a Default Judgment against Hospitality Catering Management Service, a/k/a Hospitality & Catering Services, Inc. ("Defendant"). In support of its Motion for Default Judgment, Plaintiffs aver as follows:

On September 23, 2011, Plaintiffs filed a Complaint against Defendant. [R. Doc. 1]. Plaintiffs served the Defendant in accordance with Rule 55(a) of the Federal Rules of Civil Procedure. Plaintiffs attempted to deliver the summons and complaint to the Defendant at the address in Baton Rouge that is listed with the Louisiana Secretary of State as the office of Defendant's agent for service of process. After discovering that Defendant and its agent were no longer at this address, Plaintiffs served the summons and complaint on Defendant by certified mail at Defendant's domicile address, listed with the

Louisiana Secretary of State. A copy of the certified mail receipt was previously filed with the court, and shows that the mail was received on November 14, 2011. [R. Doc. 6].

Service having been perfected on November 14, 2011, Defendant's answer was due 21 days later. Through the date of this filing, no responsive pleadings have been filed by Defendant. On December 22, 2011, the Clerk of this Court entered default against Hospitality. [R. Doc. 7]. The requisite time has passed since the Clerk's Entry of Default, and Plaintiffs assert that it is now appropriate for the Court to enter a Default Judgment against Defendant.

## I. Background

Plaintiffs are alien workers were hired to work for Defendant in September 2009. Defendant filed H2B visas on behalf of Plaintiffs, however, the visas were denied because Defendant failed to demonstrate that its employment needs met the regulatory definition of temporary services as defined in 8 C.F.R. 214.2(h)(6)(ii). *See* Exhibit A.

Plaintiffs have filed suit against alleging that their former employer imposed forced labor on Plaintiffs, underpaid their wages, failed to provide promised housing, and issued paychecks to Plaintiffs that were dishonored for insufficient funds. In addition, Plaintiffs allege claims under the Fair Labor Standards Act ("FLSA"), the Victims of Trafficking and Violence Protection Act, 18 U.S.C. § 1581 *et seq.* (2008) ("VTVPA"), and the Legal Immigration Family Equity Act of 2000 ("L.I.F.E. Act"), in which Congress created the nonimmigrant visa category designated in section 101(a)(15)(U) of the Immigration and Nationality Act (the "U visa").

Specifically, Plaintiffs allege that Defendant promised housing and/or housing subsidies and wages in exchange for Plaintiffs' labor, that Defendant agreed to obtain

and/or extend or change Plaintiffs' visas so they could be employed by Defendant lawfully (*i.e.*, with authorization from U.S. Citizenship and Immigration Services ("U.S. C.I.S."), of the Department of Homeland Security), and that the Defendant failed to honor these promises and representations. Plaintiffs seek U-Visa certifications, because Defendant's failure to seek, extend, or change Plaintiffs' visas (1) has left Plaintiffs unable to change or extend their status in the United States, even were a subsequent employer or employers to seek such change(s) or extension(s) on their behalf, and unable to resolve their immigration status (unless Plaintiffs receive U-Visa certifications and file applications for U-Visas with U.S. C.I.S.), (2) has left Plaintiffs at risk of removal from the United States, and (3) has forced Plaintiffs into involuntary servitude.

## II. Law and Analysis

### A. Fair Labor Standards Act ("FLSA").

Under the FLSA, 29 U.S.C. § 207(a)(1), "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods and commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Throughout their employment by the Defendant, Plaintiffs experienced nonpayment of wages, delayed payment of wages, and underpayment of wages. Defendant consistently made tardy and insufficient wage payments to Plaintiffs. Oftentimes Plaintiffs attempted to cash their paychecks, however the checks were dishonored by local banks for lack of sufficient funds. *See* Exhibit B. On numerous

occasions, Plaintiffs were not paid overtime when they worked more than 40 hours in a given week in direct violation of the FLSA. Although Plaintiffs routinely worked more than 40 hours in a given week, Defendant failed to keep an accurate and complete record of the hours worked by Plaintiffs as required by the FLSA and the Code of Federal Regulations at 29 C.F.R. § 516.2.

Under 29 U.S.C. § 216(b), any employer who violates § 207 of the FLSA shall be liable, *inter alia*, to the affected employee the amount of unpaid overtime compensation. Due to the number of Plaintiffs, the differences and differing discrepancies in their hours and pay, the lack of documentation from Defendant (from whom Plaintiffs originally anticipated discovery), Plaintiffs have not been able to calculate their monetary damages precisely. Accordingly, Plaintiffs seek only the recruitment fee (at least $375.00 each), their travel expenses to the employment site ($154.00 each), which for all Plaintiffs total $6,877.00.

B. **Victims of Trafficking and Violence Protection Act ("VTVPA").**

In exchange for their labor, the defendant promised Plaintiff not only housing and salaries, but also that defendant would prepare and file applications with U.S. Citizenship and Immigration Services (of the Department of Homeland Security) to seek, extend, and/or change Plaintiffs' status so that they could remain in lawful status while employed by Defendant. Defendant failed to pay the appropriate wages by issuing paychecks to Plaintiffs that were dishonored for insufficient funds, by failing to pay Plaintiffs for overtime hours, and by placing more than the agreed-upon number of employees in each rented dwelling (overcrowding). Moreover, the Defendant also failed to process correctly and failed to complete the processing of the applications to seek, extend, and/or

change Plaintiffs' status, which left Plaintiffs out of status and has exposed them to risk of deportation and the inability now to change their status through any subsequent employer. When Plaintiffs complained of these violations, the Defendant threatened and coerced them to continue working, subjecting them to involuntary servitude, in violation of the VTVPA. VTVPA § 1581 *et. seq.*, and § 1595 (2008).

### C. U Visa Certification under Section 101(a)(15)(U) of the Immigration and Nationality Act in accordance with the Legal Immigration Family Unity Act of 2000 ("L.I.F.E. Act").

According to the regulations promulgated by the Department of Homeland Security, the purpose of the U nonimmigrant classification is to provide a safe-harbor for undocumented victims of qualifying criminal activity. 72 Fed. Reg. 53014-15. The regulations state:

> Alien victims may not have legal status and, therefore may be reluctant to help in the investigation or prosecution of criminal activity for fear of removal from the United States. In passing this legislation, Congress intended to strengthen the ability of law enforcement agencies to investigate and prosecute cases of domestic violence, sexual assault, trafficking of aliens and other crimes while offering protection to victims of such crimes. See BIWPA,[1] sec. 1513(a)(2)(A). Congress also sought to encourage law enforcement officials to better serve immigrant crime victims.

*Id.*

Several criteria apply to U visas. An applicant must: have suffered substantial physical or mental abuse as a result of qualifying criminal activity; possess information concerning the qualifying criminal activity; and have been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of the criminal act. 8 U.S.C. § 1101(a)(15)(U)(i). In addition, an applicant must submit Supplement B to Form I-918 to

---

[1] BIWPA refers to the "Battered Immigrant Women Protection Act of 2000."

file for a U-Visa. Supplement B is also known as "U Nonimmigrant Status Certification," and requires a qualified "certifying official" to affirm:

> the person signing the certificate is the head of the certifying agency, or any person(s) in a supervisory role who has been specifically designated by the head of the certifying agency to issue U nonimmigrant status certifications on behalf of that agency, or is a Federal, State, or local judge; the agency is a Federal, State, or local law enforcement agency, or prosecutor, judge or other authority, that has responsibility for the detection, investigation, prosecution, conviction, or sentencing of qualifying criminal activity; the applicant has been a victim of qualifying criminal activity that the certifying official's agency is investigating or prosecuting; the petitioner possesses information concerning the qualifying criminal activity of which he or she has been a victim; the petitioner has been, is being, or is likely to be helpful to an investigation or prosecution of that qualifying criminal activity; and the qualifying criminal activity violated U.S. law, or occurred in the United States, its territories, its possessions, Indian country, or at military installations abroad.

Plaintiffs request that the undersigned act as the "certifying official" for their U-Visa applications. It is undisputed that a federal judge is qualified to "certify" U-Visa applications. 8 U.S.C. § 1101(a)(15)(U)(i)(III); 8 C.F.R. § 214.14(a)(3)(ii).[2]

The Plaintiffs assert that they have been victims of involuntary servitude. The statutory definition of "involuntary servitude" includes a condition of servitude induced by means of--

> (A) any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or (B) the abuse or threatened abuse of the legal process. 22 U.S.C. § 7102(5).

---

[2] The regulations specifically state, "[j]udges neither investigate crimes nor prosecute perpetrators. Therefore, USCIS believes that the term 'investigation or prosecution' should be interpreted broadly as in the AG Guidelines." 72 Fed. Reg. 53020.

Defendant used the threat of deportation to force Plaintiffs to continue working, despite underpayment of wages, and breach of the Defendant's agreements with Plaintiffs. Even when Plaintiffs voiced their refusal to remain in or work in the United Status unlawfully and/or without appropriate authorization, Defendant threatened that if the Plaintiffs ended their employment early, Defendant would, either, never process Plaintiffs' visas or seek to extend or change Plaintiffs' visas, or that Defendant would have Plaintiffs deported. Thus, there is sufficient evidence for a *prima facie* showing of involuntary servitude.

The Department of Labor requires that employers who seek H2B visas for employees follow specific guidelines. Workers are not to be asked to pay or permitted to pay any type of "recruitment" or "job-placement" fee. Defendant violated this requirement when it requested that Plaintiffs individually pay $375.00 as an advance deposit for employment, as described in Plaintiffs' affidavits (Exhibit C). In addition, travel to the location of the employer must be reimbursed to an H2B employee on the first paycheck. The airfare and hotel that Plaintiffs paid was never repaid to Plaintiffs by Defendant. Moreover, the labor certification must list the location where employees will work and the specific type of labor in which the employee will be engaged. Defendant falsely told the Department of Labor that Plaintiffs would work in Fort Walton Beach, Florida, though in fact Defendant directed Plaintiffs to work in Bossier City, Louisiana at different establishments than those Defendant reported to the Department of Labor. In addition, an H2B employer is required to furnish each employee a job offer letter, which Defendant never did.

Furthermore, Plaintiffs filed a formal complaint against Defendant with the Department of Labor. *See* Exhibit D. After filing the complaint with the Department of Labor, Plaintiffs were individually interviewed on the complaint. The investigation is currently under review and has been referred to the Department of Labor's Office of Inspector General – Office of Labor Racketeering and Fraud Investigations. This investigation may well lead to the prosecution of Defendant and/or its officers for trafficking, harboring, subjecting aliens to forced labor, involuntary servitude, and/or labor racketeering. U.S. C.I.S. interprets 'helpful' to mean assisting law enforcement authorities in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim. The requirement was written with several verb tenses, recognizing that an alien may apply for U nonimmigrant status at different stages of the investigation or prosecution.

By allowing an individual to petition for U nonimmigrant status upon a showing that he or she may be helpful at some point in the future, U.S. C.I.S. has found that Congress intended for individuals to be eligible for U nonimmigrant status at the very early stages of an investigation. This suggests an ongoing responsibility to cooperate with the certifying official while in U nonimmigrant status. 72 Fed. Reg. 53019. Indeed, part of the regulations in the CFR state, "U nonimmigrant status certification means Form I-918, Supplement B, 'U Nonimmigrant Status Certification,' which confirms that the petitioner has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim." 8 C.F.R. § 214.14(a)(12).

Whether abuse is substantial is based on a number of factors, including but not limited to: The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim, including aggravation of pre-existing conditions. No single factor is a prerequisite to establish that the abuse suffered was substantial. And a series of acts taken together may be considered to constitute substantial physical or mental abuse cumulatively, even where no single act alone rises to that level. 8 C.F.R. §214.14(b)(1). In addition, the regulations state, "[p]hysical or mental abuse means injury or harm to the victim's physical person, or harm to or impairment of the emotional or psychological soundness of the victim." 8 C.F.R. § 214.14(a)(8).

Plaintiffs each paid $300 a month for rental and living expenses to stay in overcrowded apartments, though Defendant promised that there would only be two to four individuals per household. Several of the Plaintiffs lived in apartments where there were six people living, and Defendant collectively deducted $1,200.00 - $1,800.00 per month from Plaintiffs' paychecks though Defendant paid no more than $730.00 in monthly rent for each apartment. *See* Exhibit E – paychecks, pictures, lease agreement. In addition, Defendant often did not pay the rents to the landlord(s), which Plaintiffs discovered when they received eviction notices, though Defendant had deducted more than the total rents from Plaintiffs' paychecks on a biweekly basis.

Plaintiffs have lost their lawful status because of Defendant's failure to prepare and file proper paperwork to seek, extend, or change Plaintiffs' visas. This disqualifies them from gainful employment with any other employers (further committing them to

involuntary servitude at the hands of Defendant) and subjects them to risk of deportation. As a result, Plaintiffs are now unable – even through any subsequent employers – to change or extend their status or visas. If Plaintiffs were not granted U-visa certifications, they would remain ineligible under the immigration laws to resolve their status.

The Defendant has failed to appear before the court and has failed to file any answer, which suggests that any monetary judgment against Defendant is likely uncollectable. Therefore, the only significant remedy available to Plaintiffs is their U-visa certifications (Exhibit F), which would allow them to apply for U visas from U.S. C.I.S.

For these reasons, Plaintiffs ask for a monetary judgment against Defendant of $6,877.00, and for the court to execute Plaintiffs' U-visa certifications.

Respectfully submitted,

**The Law Office of Alan F. Kansas, LLC**
/s/Alan F. Kansas
ALAN F. KANSAS, BAR #27725
1801 Carol Sue Ave.
Terrytown, LA 70056
(504) 210-1150
FAX (504) 617-6525

**Reina & Bates**
/s/ Joseph Reina
JOSEPH REINA
Texas State Bar No. 16754550
1140 Empire Central Drive, Suite 300
Dallas, Texas 75247
Telephone: 214 905 9100
Facsimile: 214 905 9510

**ATTORNEYS FOR SALVACION G. AGATON, et al.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of April, 2012, I electronically filed the foregoing with the Clerk of the Court using the ECF system.

And I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-ECF participants:

    Hospitality & Catering Services, Inc.
    112 N. Curry St.
    Carson City, NV 89703

    Hospitality & Catering Management Services, Inc.
    2150 S. Canalport Ave., Suite 3-A1
    Chicago, IL 60608

                                        *s/Alan F. Kansas*

                                        *s/Joseph Reina*